29 C.C.P.A.(Patents)

## In re DE GROOTE et al.

### Patent Appeal No. 4615.

Court of Customs and Patent Appeals.
April 27, 1942.

Pennie, Davis, Marvin & Edmonds, of New York City (R. T. McLean, of New York City, and C. M. Fisher, of Washington, D. C., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

Appellants, as joint applicants, by appeal bring before us for review the decision of the Board of Appeals of the United States Patent Office affirming the decision of the examiner denying patentability, in view of prior art, of all the claims, numbered 1 to 7, inclusive, of their application for patent entitled "for Composition of Matter." Avoiding, for the nonce, the use of a multiplicity of technical terms, it may be said that the controversy revolves about the item of fatty acids of blown castor oil, combined with diethanolamine in a material for use in the treatment of emulsions of mineral oil and water, such as petroleum emulsions, to separate the mineral oil from the water.

The brief on behalf of appellants states: "No question of the scope or preciseness of the claims has been raised, and as a practical matter, the patentability of all of the claims can and should be decided by determining the patentability of a single composition, namely, the ester of diethanolamine with the fatty acids derived from blown castor oil. It was on this basis that the Patent Office approached the question of patentability and one which we think is quite appropriate, as it greatly simplifies consideration of the questions involved."

In view of the foregoing statement, which apparently is in conformity with the views of the tribunals of the Patent Office, it is unnecessary for us to consider the claims separately. We quote claims 3 and 7 as illustrative:

"3. A new composition of matter derived by reaction, under substantially anhydrous conditions, between a blown castor oil and diethanolamine within the molal ratio of 1:1 and 1:3, at a temperature above the boiling point of water and below the point of decomposition, said reaction being conducted in a manner to yield a substantial quantity of basic material in which the blown oil fatty acid radical is attached to the basic nitrogen atom through a carbon chain by replacement of the hydrogen of at least one hydroxyl of the hydroxy amine by the acyl group of the blown oil fatty acid radical, with the added proviso that the ratio of said acid radical to amino nitrogen atom shall be at least 1:1 and not more than 2:1; said basic material being further characterized by absence of amide and polyamino radicals.

"7. A new composition of matter, comprising a chemical compound of the type indicated by the formula:

$$\left[(R.COO. \quad alkyl)\right]NH$$
$$(T)$$

in which T is a hydroxy ethyl radical and R.COO is a blown oil fatty acid radical derived from castor oil."

The references cited are: Albrecht, 1,-936,533, Nov. 21, 1933; Stehr, 2,023,979, Dec. 10, 1935; Kritchevsky, 2,089,212, Aug. 10, 1937.

Specifically, the claims stand rejected, first, as lacking invention over the patent to Albrecht in view of the patent to Stehr, and, second, as lacking invention over the patent to Kritchevsky in view of the patent to Stehr.

From the specification of appellants' application, it is deduced that blown castor oil is a product which results from the oxidation of raw castor oil, the oxidation process being "generally conducted by means of moist or dry air, ozone, ozonized air, or a mixture of the same." It is also deduced, from the same source, that blown, or oxidized, castor oil differs in its "chemical and physical properties and characteristics" from raw castor oil.

In the course of its decision the board stated: "The appealed claims relate to a composition comprising the combination of a diethanolamine with blown fatty acid radicals derived from castor oil. The composition may be quite complex in detail but it appears broadly emphasized that the critical feature is that at least one hydrogen atom must remain in the amine nucleus with the other two, replaced with fatty acid ester and the remnant of the ethanol radical."

The pertinent disclosures of the references are as follows:

The patent to Stehr discloses a process of combining blown castor oil with triethanolamine. The patents to Kritchevsky and Albrecht both disclose combining raw (that is unblown) castor oil with a diethanolamine, and the latter patent states that commercial triethanolamine contains also diethanolamine, and other chemical compounds which it is said "function, with minor differences, in the same way as triethanolamine."

It may be said that all the claims of the Stehr patent are process claims and the specification states that the invention relates to the treatment of emulsions of mineral oil and water, such as petroleum emulsions, for the purpose of separating the oil from the water. The Albrecht patent contains both product and process claims, the product being stated to be useful for coating metal and valuable for inhibiting the formation of rust on metal surfaces. The Kritchevsky patent likewise contains both product and process claims, and it is stated that the compounds made in accordance with the invention have a number of uses among which are enumerated the emulsification of water insoluble pigments; improving the action of paints, printing inks, etc.; as a scouring preparation for wool, and as emulsifying agents in water-oil emulsions, such as margarine, in which use they keep the emulsion from leaking and prevent spattering during frying.

In the course of its decision the board said:

"While it is conceded that the terms of applicants' claims are not directly anticipated and that the rejection involves association of features not before apparently combined but each being known in analogous relation, it is suggestive to one skilled in the art to try such combination—In re Wietzel, [39 F.2d 669], 17 C.C.P.A. [Patents], 1079. The same conclusions apply to the second ground of rejection which is similar, namely, Kritchevsky in view of Stehr. Kritchevsky possibly more directly discloses employment of diethanolamine in this relation than Albrecht but like Albrecht with raw castor oil instead of blown castor oil.

"We have carefully examined applicants' contentions in regard to patentability and agree that the product may be different. It would be rather expected that some difference would result in this complex organic reaction or reactions that may occur in this relation but we are not convinced that invention is necessarily involved for this reason. We are in agreement with the examiner's conclusions that within the scope of the variations involved here, it is within the skill of those working in the art to attempt and accomplish the same reaction without involving new or unobvious result constituting invention. The question of breaking hydrocarbon emulsions advanced as a possible distinction between applicants' product and that of the citations is not directly involved in the claims on appeal and is regarded as rather too indefinite and uncertain as a basis for allowance of the claims."

In a second decision rendered in response to a petition for reconsideration, the board further said: "The additional argument with the petition concerning difference between formation of salts and esters has been considered but it is not persuasive of error as to the above conclusion in respect to invention."

324

While the subject matter of the appealed claims is technical in character there appears to be no doubt that appellants have produced a new and useful chemical compound embracing elements not shown to have been combined in any prior art compound.

It is true that the Albrecht patent contains the statement, as above recited, to the effect that commercial triethanolamine contains other elements, one of which is diethanolamine, and states that such elements or compounds, with minor differences, function in the same way as triethanolamine. We assume this to mean that diethanolamine combined with raw castor oil (the only kind used by Albrecht) would result in a product similar to that obtained by combining raw castor oil with triethanolamine, but we do not take this as teaching that the same result would follow the use of blown castor oil in the combination.

It is also true that the Stehr patent teaches the use of blown castor oil but we fail to find any suggestion in that patent that Stehr used diethanolamine in any form. It may be, of course, that some diethanolamine was present as a part of the triethanolamine, the use of which he taught, but, it is our view, that this should not be taken as an anticipation of the teaching of appellants which we understand to mean diethanolamine, separated from other and more complex compounds.

In the case of In re Rudolph Wietzel and Wilhelm Michael, 39 F.2d 669, 17 C.C.P.A., Patents, 1079, cited as authority by the tribunals of the Patent Office, all the claims were process claims but the product resulting from the process seems to have been conceded to be old in chemical art. We there sustained the holding of the board that nothing inventive was present in the process. Here we have claims for a concededly new product, and we feel constrained to disagree with the tribunals below as to their patentability. The situation here, as we view it, is more nearly analogous to that which existed in the case of In re Christmann et al., 107 F.2d 607, 27 C.C.P.A., Patents, 708, than it is to that of any of the other cases cited.

It is a well settled rule that any reasonable doubt which exists should be resolved in favor of an applicant.

Upon the facts stated and for the reasons indicated, we are of opinion that the claims at issue should be allowed.

The decision of the board affirming that of the examiner is, therefore, reversed.

Reversed.